NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| COURTNEY DANIELS, | |
| Plaintiff, | |
| v. | Civil No. 07-1735 |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

APPEARANCES:

Robert Anthony Petruzzelli, Esq.
Jacobs, Schwalbe & Petruzzelli, PC
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
      Attorney for Plaintiff

Christopher J. Christie
United States Attorney
      By:  Vernon Norwood
            Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza Room 3904
New York, NY 10278
      Attorney for Defendant

**BUMB**, United States District Judge:

**Introduction:**

      This matter comes before the Court pursuant to Section

205(g) of the Social Security Act (the "Act"), as amended, 42

U.S.C. 405(g), to review the final decision of the Commissioner

of the Social Security Administration ("the Commissioner"),
denying the application of Plaintiff, Courtney Daniels,
(hereinafter "Plaintiff" or "Daniels"), for Supplemental Security
Income ("SSI") and Disability Insurance Benefits ("DIB").

This Court must determine whether the Administrative Law
Judge properly found that Plaintiff was not disabled after
concluding that Plaintiff's residual function capacity ("RFC")
allowed her to perform her past relevant work ("PRW") as a
collections clerk.


I. **Background**

A. **Procedural History**

Daniels seeks review of the final decision of the
Commissioner denying her application for DIB and SSI.  This Court
has jurisdiction to review this matter pursuant to 42 U.S.C. §
405(g) and § 1383(c)(3).

On October 17, 2003, Daniels filed an application for DIB
and SSI with the Social Security Administration ("SSA"), alleging
disability as of November 16, 2002.  (R. at 50-52, 411-13).
Plaintiff's application was denied.  (R. at 26-31).  Plaintiff
filed a "Request for Reconsideration" (R. at 32), which was
denied on November 23, 2004 by the SSA.  (R. at 33-36).

On December 14, 2004, Daniels filed a "Request for a Hearing
by an Administrative Law Judge".  (R. at 37).  The hearing was

held before Administrative Law Judge Joseph A. Pachnowski ("ALJ") on September 28, 2005. (R. at 426-46). The ALJ denied Plaintiff's application on October 26, 2005, finding that Plaintiff is not disabled within the meaning of the Act. (R. at 10-22). Daniels then submitted a "Request for Review" of the ALJ decision by the Appeals Council. (R. at 9). The Appeals Council applied the laws, regulations, and rulings in effect as of the date of the denial of the "Request for Review" and determined that there was no reason to review the ALJ's decision. (R. at 5). The Appeals Council considered the reasons Plaintiff expressed for disagreeing with the ALJ's decision and found that there was no basis for changing the decision. (R. at 5-6). Thus, the ALJ's October 26, 2005, finding that Plaintiff is not disabled within the meaning of the Act became the Commissioner's final decision.

Plaintiff filed the instant action on April 13, 2007, claiming that she is totally disabled and unable to perform any work available to her within the national economy. Plaintiff claims that the findings, opinions, and conclusion of the ALJ and Appeals Council are not supported by substantial evidence.

B.   **Evidence in the Record**

1.   **Plaintiff's Testimony**

Plaintiff, a 46-year-old woman, is a resident of New Jersey

3

(R. at 411-12, 426).  She has a daughter and a son.  (R. at 427).
Plaintiff's past work experience includes: assistant manager at a
restaurant, therapeutic recreation assistant, collection agent,
and accounts receivable manager.  (R. at 14).  Plaintiff alleges
that a car crash on November 16, 2002 (the "Accident"), has left
her disabled and unable to work as an accounts receivable
manager.  (R. at 427-29).

Plaintiff testified that her back, neck, and right shoulder
were injured in the Accident and claims that her injuries were
aggravated, but no new injuries occurred, during a second car
crash on December 24, 2004.  (R. at 429-30).  Plaintiff testified
that she has constant pain in her lower back and that she has
shooting pain in her hips and thighs about three or four days a
week.  (R. at 431-32).  Plaintiff testified that she experiences
pain in her neck and shoulder, but that it is not as severe as
the pain in her back.  (R. at 436-37).  She further testified
that certain treatments have helped alleviate her back pain:
radio frequency treatment has eliminated the burning sensation
that Plaintiff experienced in her back, and epidural injections
relieve her back pain for a couple of weeks at a time.  (R. at
432).  Plaintiff uses a cane prescribed by an occupational
therapist.  (R. at 436).

Plaintiff takes certain medication to alleviate her pain and
testified that the adverse side effects of her medication include

4

difficulty concentrating, confusion, and depression.  (R. at
434).  Plaintiff experiences difficulty sleeping, and her
depression sometimes causes her difficulties interacting with her
children.  (R. at 435).

Plaintiff completed an "Activities of Daily Living
Questionnaire" as part of her disability application.  (R. at
82).  Since the onset of her alleged disability, she spends a
typical day getting her children ready for school, preparing
breakfast, washing the dishes, doing laundry, preparing dinner,
helping her children with their homework, and taking her children
to practice.  Id.  She enjoys reading and watching television but
has difficulty concentrating during these two activities.  (R. at
83, 435).  Plaintiff testified that she is able to drive, cook,
and can go food shopping with help from her boyfriend or
children.  (R. at 437-38).  She can put a load of clothes in the
washing machine, however, she needs help taking them out, and her
mother or children do the other chores around the house.  Id.
Daniels attends weekly church services, but cannot go as often as
she once did.  (R. at 440-41).  Plaintiff can attend her son's
football games, but she is unable to sit in the bleachers.  (R.
at 441).

Plaintiff testified that she can sit for up to forty minutes
at a time, stand for forty-five minutes, and walk for around
fifteen minutes, but cannot bend at the waist to tie her own

shoelaces and is unable to squat at the knees.  (R. at 438-40).
Plaintiff is able to lift and carry a gallon of milk.  (R. at
440).

In January of 2004, Plaintiff returned to work for the same
employer, performing the same job that she had before the
accident.  (R. at 441-42).  Plaintiff testified that she missed a
lot of work due to her back problems and doctors' appointments.
(R. at 442).  The heavy-duty medication she was on caused her to
sleep on the job, and she was ultimately terminated due to her
poor job performance.  (R. at 443).


    **2.**  **Medical History**

Plaintiff was hospitalized overnight at Cooper Trauma
for head, neck, chest, back, and pelvis pain on account of the
Accident.  (R. at 353).  A CT scan of Plaintiff's head and neck
was unremarkable.  (R. at 182).  She was discharged with the
diagnosis of cervical strain.  (R. at 431).  Orthopaedics,
believing that Plaintiff had suffered soft tissue injury,
recommended that she wear a soft collar for four weeks and
prescribed pain medication.  (R. at 341).

Dr. Stephen Raphael, M.D., Plaintiff's primary physician,
referred her to Dr. Brad Tinkelman, M.D., who examined her on
December 10, 2002.  (R. at 173-74).  Dr. Tinkelman noted that
Plaintiff had some mild residual shoulder pain from a car

accident in April of 1997, but was mostly symptom free.  Id.  Dr. Tinkelman reported that Plaintiff's neck demonstrated significant tenderness posteriorly with decreased range of motion due to pain.  Id.  Daniels had tenderness in the lumbar spine with decreased range of motion at her hips.  Id.  Plaintiff had positive Tinel's sign on the right and neurological testing was essentially normal.  Id.  Dr. Tinkelman determined that Plaintiff likely suffered from a cervical strain with muscle spasm and possible radiculopathy, lumbar strain with muscle spasm, and a possible right shoulder injury.  Dr. Tinkelman wanted a MRI and EMG performed on Daniels.  Id.

Dr. Dahlia Wilson, M.D., saw Plaintiff in neurological follow up on January 31, 2003.  (R. at 169).  Dr. Wilson observed that Plaintiff's gait was normal and that she had full muscle strength.  Id.  Daniels reported that her neck and lower back pain had improved with the use of the prescribed muscle relaxants.  Id.  The EMG of her upper extremities was normal.  Id.  Dr. Wilson diagnosed Plaintiff with strain and sprain of the cervical and lumbar spines.  Id.

Dr. Raphael referred Daniels to Dr. Marc Kahn, M.D., who examined her on March 19, 2003.  (R. at 176).  The examination revealed full range of motion of the cervical spine, with no tenderness or muscle spasm.  Id.  There was full range of motion in all joints of the upper extremities.  Motor, sensory, and

reflex examinations of the upper extremities were within normal limits.  Id.  Examination of the thoracic spine revealed no tenderness or muscle spasm.  Plaintiff lacked thirty-percent of the normal range of motion in all planes in the lumbar spine. Id.  Spasm and guarding occurred in the extremes of all planes. Id.  There was midline tenderness and paravertebral muscle tenderness to palpation.  Id.  Neurological examination of the lower extremities was normal.  (R. at 176).  Dr. Kahn assessed acute traumatic cervical sprain and strain, acute lumbosacral sprain and strain, a possible tear of her right rotator cuff, a history of knee surgery, and right upper extremity radiculopathy. Id.  Dr. Kahn commented that Daniels was certainly symptomatic from the injuries she received in the car accident, and that she remained limited with regards to the routine activities of daily living.  Id.

Dr. Kahn referred Plaintiff to Dr. Vincent Padula, D.O., who examined her on April 29, 2003.  (R. at 336).  In her visit to Dr. Padula, Daniels characterized her low back pain as a constant, sharp, aching sensation across her low back with radiation into the bilateral buttock areas.  Id.  However, therapy had afforded her significant relief from the back pain. Id.  Dr. Padula's impression was that Plaintiff suffered significant injuries at the time of the motor vehicle accident. Id.  He believed that she had a component of lumbar facet

8

disease.  Id.  Daniels' gait was antalgic.  Id.  She was very
tender to palpation over the lumbar paravertebral areas and had
significant pain upon extension of the lumbar spine.  (R. at
336).  Her motor strength was five out of five in the bilateral
lower extremities.  Id.  Deep tendon reflexes were plus two out
of four in the bilateral lower extremities.  Id.

      Plaintiff underwent a series of L3, L4, and L5 medial branch
nerve blocks, which gave her short-lived complete relief.  (R. at
335).  Plaintiff received a L3, L4, and L5 medial branch nerve
rhizotomy with radio frequency.  (R. at 333).  Plaintiff reported
that this treatment gave her significant relief of the burning
across her low back.  Id.  Dr. Padula reported that Daniels was
doing "quite well."  (R. at 332).  Her pain was improved by
fifty-percent as of November 26, 2003.  (R. at 333).

      Plaintiff returned to Dr. Padula's office on January 21,
2004.  (R. at 331).  Daniels' status had been improving, but she
complained of increased pain after returning to work.  Id.  Dr.
Padula found that the MRI of the lumbar spine was within normal
limits.  (R. at 329).  Dr. Padula performed a lumbar discogram on
June 14, 2004.  (R. at 326).  The lumbar discogram revealed that
the L4 and L5 discs were the provocative discs reproducing
Plaintiff's symptoms.  Id.  Dr. Padula noted that there appeared
to be posterior annular tears at each level contributing to her
pain.  Id.  Plaintiff reported that she was doing well on the

medications and denied any side effects.  Id.  By July 1, 2004,
Dr. Padula believed that the only viable option was to perform
Intradiscal Electrothermal Therapy ("IDET") at the L4 and L5
levels.  Id.  Plaintiff's insurance company denied the procedure.
(R. at 325).

Dr. Leland Mosby, Ed.D., examined Plaintiff at the request
of the SSA on July 21, 2004.  (R. at 282).  Daniels denied any
past psychiatric history, but reported being prescribed
Fluoxetine (Prozac).  (R. at 282-83).  Plaintiff reported a
history of hypertension, irritable bowel syndrome, and serious
back problems, all due to the car accident.  Id.  Daniels
indicated that she was able to wash clothing, but could not do
any heavy lifting.  (R. at 283).  Plaintiff reported that she had
severe sleeping problems, that her children had to go shopping
with her because she could not carry the packages, and that her
grandmother and children did most of the housework and took care
of money and household management.  (R. at 283-84).

Dr. Mosby noted that Plaintiff was able to drive herself to
the disability evaluation.  (R. at 284).  He observed that
Plaintiff's affect was flat and her mood was depressed.  Id.  Dr.
Mosby assigned Plaintiff a GAF rating of 55[1].  Id.  During the

---

[1] A GAF score of 55 is indicative of one who suffers from
moderate symptoms or moderate difficulties in social or
occupational functioning.  A GAF score of 51-60 indicates the
following: Moderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) or moderate

course of the evaluation Plaintiff was emotional and tearful.
Id.  She was oriented to time, place, and person, and there did
not appear to be any thought disorder.  Id.  Plaintiff's speech
was verbal, coherent, and goal directed.  Her attention and
recent memory were good.  (R. at 284-85).  Daniels appeared to be
a bright individual, who was able to perform mathematical
calculations and engage in abstract reasoning.  (R. at 285).  Dr.
Mosby's impression was major depression, recurrent, severe,
without psychotic features. Id.  Dr. Mosby recommended that
Plaintiff continue under the care of her physician and have a
psycho-pharmacological consult with a psychiatrist to evaluate
the appropriate level of antidepressant medication.  Id.

     Dr. Nenuca Bustos, a State agency psychiatric consultant,
reviewed the evidence of record on August 4, 2004.  (R. at 291).
Dr. Bustos found that an impairment of major depression,
recurrent, severe, without psychotic features did exist.  (R. at
294).  Dr. Bustos assessed that the Plaintiff's depressive
disorder did not meet or medically equal any "listed impairment"
defined in 20 C.F.R. §404.1520.  Id.  Dr. Bustos believed that
Plaintiff retained the mental residual capacity to work in a low
demand, low contact work setting.  (R. at 312).

-------------------

difficulty in social, occupational, or school functioning (e.g.,
few friends, conflicts with peers or co-workers). *Diagnostic and
Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th ed., text
revision, American Psychiatric Association 2000 at 34).  See
Moore v. Barnhart, 2006 WL 4059095, at *7 (D. Kan. 2006).

Dr. Nithyashuba Khona, M.D., conducted a consultative orthopedic examination on August 19, 2004.  Plaintiff reported to the doctor that the pain in her back was excruciating, going down to her legs, and never went away.  (R. at 305).  Plaintiff walked with a normal gait and did not use any assistance device.  (R. at 306).  Daniels stated that she was unable to walk on her toes and heels, or squat, because it caused her pain.  Id.  She had full range of motion in her upper extremities and a grip strength of 5/5.  Id.  Dr. Khona found decreased range of motion in Plaintiff's back.  Id.  Daniels stated that she had muscle spasms, but would not let Dr. Khona examine her neck.  Id.  On her own, Plaintiff moved her neck to 30 degrees of lateral flexion on the right and 40 degrees on the left, 50 degrees of extension and 70 degrees of rotation.  Id.  Dr. Khona noted tenderness from hip to toe and a decreased range of motion in her spine. (R. at 306).  Plaintiff had full bilateral range of motion of the hips, knees, and ankles, and full muscle strength in the lower extremities.  (R. at 307).  No muscle atrophy or sensory abnormalities were noted in the upper or lower extremities.  Id.

Dr. Khona diagnosed that the motor vehicle accident had caused lumbar sprain, strain syndrome.  Id.  Dr. Khona found that there were basically no positive physical findings except patient's subjective complaints of pain.  Id.  Though Daniels complained of lower back pain and decreased range of motion, she

12

was able to put on her shoes and socks, which required
flexibility to bend to reach her feet.  (R. at 307).  Dr. Khona
found that all studies were negative and that Plaintiff
exaggerated her complaints of pain.  Id.

Dr. Isabella Rampello, a State agency medical consultant,
reviewed the evidence of record on August 30, 2004.  (R. at 314).
Dr. Rampello found that Plaintiff's pain was credible.  (R. at
319).  Dr. Rampello found that Plaintiff could frequently lift
and carry 10 pounds, stand for two hours, and sit for six hours
in an eight hour workday.  (R. at 315)

On September 2, 2004, Dr. Peter Arino, D.O., an associate of
Dr. Padula and Dr. Steven Ressler, noted that the medication was
providing Plaintiff adequate pain relief without side effects.
(R. at 324).  After an examination on November 24, 2004, Dr.
Arino again noted that Daniels was having no side effects from
the drugs.  (R. at 401).  On January 12, 2005, Dr. Arino reported
that a recent EMG showed no nerve root compression.  (R. at 400).
He noted that though Plaintiff was in significant pain, she was
still having adequate pain relief without any side effects from
the drugs.  Id.  Dr. Arino reported after a March 3, 2005,
examination that Plaintiff was experiencing pain and difficulty
sleeping.  (R. at 398).

Dr. Steven Yocom, M.D., examined Plaintiff on May 19, 2005.
(R. at 409).  Dr. Yocom noted that Daniels' chief complaint was

of persistent low back pain that radiated across her hips.  Id.
Motor examination revealed normal bulk and tone in the bilateral
upper and lower extremities.  Id.  Power testing was limited
secondary to effort.  Id.  Straight leg raising was reproductive
of back pain.  Id.  Plaintiff walked with an antalgic gait.  Id.
Dr. Yocom noted that a MRI scan of the lumbar spine was extremely
normal.  (R. at 410).  The discs looked fine and there was no
stenosis or herniation.  Id.  Dr. Yocom believed that there was
no role for surgery at that point, as the patient would do poorly
with any type of surgery.  Id.  Dr. Yocom suggested that
Plaintiff continue with pain management.

　　　Dr. Ressler, M.D., performed a lumbar epidural steroid
injection on June 10, 2005, and reexamined Plaintiff on July 20.
(R. at 407).  Though Daniels testified that she still had
occasional spasm and severe low back pain which was ongoing, the
injection had provided significant relief.  Id.  Dr. Ressler
found in the examination that there was mild restriction in range
of motion of the lumbar spine, as well as tenderness to palpation
over the lumbar paravertebral region bilaterally.  Id.  There was
no overt weakness noted, and reflexes were intact bilaterally, in
the lower extremities.  (R. at 408).

　　　Dr. Joseph Sireci, an associate of Dr. Raphael, completed
the "Medical Source Statement of Plaintiff's Ability to Perform
Work-Related Physical Activities" ("Physical Activities

14

Statement") on June 1, 2005.  (R. at 402).  Dr. Sireci found that
Daniels could only occasionally lift up to ten pounds, she could
sit for about two hours, stand for about one hour, and walk for
about two hours in an eight hour day.  Id.  Daniels was
restricted from bending, crawling, and climbing.  Id.  Dr. Sireci
found that Plaintiff's pain was severe enough to limit her
effectiveness to perform routine tasks on a productive basis.
(R. at 403).

    Dr. Sireci competed the form "Medical Opinion Re: Ability to
Do Work-Related Activities (Mental)" ("Mental Activities
Statement") on September 6, 2005.  (R. at 405).  Dr. Sireci
opined that Plaintiff was unable to maintain attention for two
hour segments, complete a normal workday and workweek without
interruptions from psychologically based symptoms, and deal with
normal work stress.  Id.  Dr. Sireci found that Plaintiff was
"seriously limited" in her ability to understand and remember
very short and simple instructions, maintain regular attendance
and be punctual, sustain an ordinary routine without special
supervision, be aware of normal hazards and take appropriate
precautions, and travel in an unfamiliar place.  Id.  On the same
form, Dr. Sireci found that Daniels could "satisfactorily" carry
out very short and simple instructions, work in coordination with
or proximity to others without being unduly distracted, make
simple work-related decisions, perform at a consistent pace

without an unreasonable number and length of rest periods, accept instructions and respond appropriately to changes in a routine work setting, understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, deal with the stress of semiskilled and skilled work, interact appropriately with the general public, maintain socially appropriate behavior, and use public transportation.  Id.  Dr. Sireci listed that Plaintiff's impairment would cause her to miss about four days of work per month.  Id.

### 3.  **ALJ Decision**

The ALJ found Plaintiff was not disabled as defined by the Act (20 C.F.R. §§ 404.1520(f), 416.920(f)).  (R. at 21).  The ALJ found that Daniels was not working, that her impairments were severe, and that the impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation 4.  Id.

The ALJ noted that he had to determine whether Daniels retained the RFC to perform the requirements of her PRW or other work existing in significant numbers in the national economy. (R. at 15).  The ALJ acknowledged that he must consider all symptoms, including pain, and the extent to which the symptoms could reasonably be accepted as consistent with the objective

medical evidence and other evidence of record.  Id.  The ALJ also stated that he must consider any statements from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations.  Id.

The ALJ gave a detailed description of the medical evidence of record, that spanned four pages of the opinion.  (R. at 15-18).  The ALJ began with Plaintiff's initial visit to Dr. Brad Tinkelman on December 10, 2002, and continued by describing all the doctor visits and diagnoses up to and including Dr. Sireci's Mental Activities Statement on September 6, 2005.  The ALJ determined that he would assign little weight to Dr. Sireci's Physical Activities Statement, as it was inconsistent with the preponderance of the medical evidence.  (R. at 18).  The ALJ afforded little weight to Dr. Sireci's Mental Activities Statement, as it was both internally inconsistent and inconsistent with the preponderance of the medical evidence.  Id.

After viewing the entire record, the ALJ found that Plaintiff's testimony was not persuasive to establish "disability."  (R. at 19).  The ALJ found that Daniels' allegations regarding her limitations were not totally credible. (R. at 21).  The ALJ reviewed the entire record and found that Plaintiff's statements concerning her impairments and their impact on her ability to work were not persuasive in light of the degree of medical treatment required, the reports of the treating

17

and examining doctors, and Plaintiff's medical history.  (R. at
19).  The ALJ stated that Plaintiff had some subjective symptoms,
but not the intensity, frequency, or duration alleged.  <u>Id.</u>
Plaintiff was found to have the following RFC: lift and carry up
to ten pounds frequently, sit for about six hours, stand and/or
walk for about two hours in an eight hour workday, but cannot
climb ladders, or be exposed to unprotected heights or hazardous
machinery and due to her depression has some mild limitations but
can satisfactorily understand, remember and carry out detailed
instructions, deal with the stress of skilled work, work in
coordination of others, make simple work-related decisions,
perform at a consistent pace, respond appropriately to
supervisors, co-workers or peers, and respond appropriately to
changes in a routine work setting.  <u>Id.</u>  The ALJ concluded that
Daniels' impairments and RFC did not prevent her from performing
her PRW as a collections clerk.  <u>Id.</u>


## II. Discussion

### A. <u>Standard of Review</u>

When reviewing a final decision of the Commissioner, the
Court must uphold the Commissioner's factual decisions if they
are supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000).
"'Supported by substantial evidence'" means more than a "'mere

18

scintilla.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229

(1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It

means "'such relevant evidence as a reasonable mind might accept

as adequate to support [the] conclusion.'" Id. Where the ALJ's

findings of fact are supported by substantial evidence, this

Court is bound by the findings, "even if [it] would have decided

the factual inquiry differently." Fargnoli v. Massanari, 247

F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel, 181 F.3d 358, 360

(3d Cir. 1999). The substantial evidence standard is

"deferential and includes deference to inferences drawn from the

facts if they, in turn, are supported by substantial evidence"

Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d

Cir. 1999). This standard allows a court to review a decision of

an ALJ, yet avoid interference with the administrative

responsibilities of the Commissioner. Claussen v. Chater, 950 F.

Supp. 1287, 1292 (D.N.J. 1996) (citing Stewart v. Secretary of

HEW, 714 F.2d 287, 290 (3d Cir. 1983)).

This Court must review the evidence in its totality.

Ahearn v. Comm'r of Soc. Sec., 165 Fed. Appx. 212, 215 (3d Cir.

2006); Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).

However, the reviewing court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-

finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

19

1992); <u>Early v. Heckler</u>, 743 F.2d 1002, 1007 (3d Cir. 1984).
Where substantial evidence of record supports the Commissioner's
findings, those findings are conclusive, even "where [the]
evidence in the record is susceptible to more than one rational
interpretation." <u>Alexander v. Shalala</u>, 927 F. Supp. 785, 791
(D.N.J. 1995), <u>aff'd per curiam</u> 85 F.3d 611 (3d Cir. 1996).

The Commissioner "must adequately explain in the record his
reason for rejecting or discrediting competent evidence." <u>Ogden
v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster
v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986). Access to the
Commissioner's reasoning is essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and
> has sufficiently explained the weight he has given to
> obviously probative exhibits, to say that his decision
> is supported by substantial evidence approaches the
> abdication of the Court's duty to scrutinize the record
> as a whole to determine whether the conclusions reached
> are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (citations
omitted). While the ALJ must review and consider pertinent
medical evidence, review all non-medical evidence, and "explain
[any] conciliations and rejections," <u>Burnett v. Comm'r of Soc.
Sec.</u>, 220 F.3d 112, 122 (3d Cir. 2000), "[t]here is no
requirement that the ALJ discuss in [his] opinion every tidbit of
evidence included in the record." <u>Hur v. Barnhart</u>, 94 Fed. Appx.
130, 133 (3d Cir. 2004); <u>see Fargnoli v. Halter</u>, 247 F.3d 34, 42
(3d Cir. 2001) ("Although we do not expect the ALJ to make

reference to every relevant treatment note in a case where the
claimant . . . has voluminous medical records, we do expect the
ALJ, as the factfinder, to consider and evaluate the medical
evidence in the record consistent with his responsibilities under
the regulations and case law."). Overall, the Court must set
aside the Commissioner's decision if the Commissioner did not
take the entire record into account or failed to resolve
evidentiary conflict. <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277,
284-85 (D.N.J. 1997) (citing <u>Gober v. Mathews</u>, 574 F.2d 772, 776
(3d Cir. 1978)).

     In addition to the substantial evidence inquiry, this Court
must review whether the administrative determination was made
upon application of the correct legal standards. <u>Sykes v. Apfel</u>,
228 F.3d 259, 262 (3d Cir. 2000); <u>Friedberg v. Schweiker</u>, 721
F.2d 445, 447 (3d Cir. 1983). This Court's review of legal
issues is plenary. <u>Sykes</u>, 228 F.3d at 262; <u>Schaudeck</u>, 181 F.3d
at 431.


     **B.   <u>Disability Defined</u>**

     The Social Security Act (the "Act") defines disability as
the inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has
lasted or can be expected to last for a continuous period of not

less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An

individual shall be determined to be under a disability

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific
> job vacancy exists for him, or whether he would be hired
> if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step sequential

analysis for evaluating a claimant's disability, as outlined in

20 C.F.R. § 404.1520(a)(4)(i)-(v); Giese v. Comm'r of Soc. Sec.,

251 Fed. Appx. 799, 801-02 (3d Cir. 2007):

1.   If the claimant currently is engaged in substantial gainful
     employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment,"
     he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment
     in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted
     or is expected to last for a continuous period of at least
     twelve months, or is expected to end in death, the claimant
     will be found "disabled."

4.   If able to perform work done in the past despite the
     impairment, the claimant will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's RFC,
     age, education and work experience to determine whether or
     not he is capable of performing other work which exists in
     the national economy. If incapable, the claimant will be
     found "disabled."  If capable, the claimant will be found
     "not disabled."

22

Id.  Entitlement to benefits is therefore dependent upon finding that the claimant is incapable of performing work in the national economy.

This analysis involves a shifting burden of proof.  Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence.  In the final step, however, the Commissioner bears the burden of proving that work is available for the petitioner: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the [Commissioner] to prove that there is some other kind of substantial gainful employment he is able to perform[.]"  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

## C.  Plaintiff's Arguments

Plaintiff argues that the ALJ (1) erred in assessing Plaintiff's residual functional capacity ("RFC"), and (2) improperly evaluated Plaintiff's credibility.  Plaintiff contends that the Commissioner erred at step four, by improperly determining that Daniels retained the RFC to return to her past relevant work ("PRW").  Plaintiff contends review of the evidence demonstrates that she did not retain the RFC to perform her PRW,

and that the Commissioner failed to meet his burden of showing
that other work exists in the national economy that accommodates
her RFC and vocational factors.  Plaintiff bears the burden of
demonstrating an inability to return to her PRW.  See Burnett v.
Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).


### 1.   Residual Functional Capacity Determination

RFC is defined as "the most you can still do [in a work
setting] despite your limitations."  20 C.F.R. § 404.1545(a)(1);
see Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d
Cir. 2000).  The ALJ assesses the claimant's RFC based on all of
the relevant medical and other evidence.  20 C.F.R. §
404.1545(a)(3).  Determination of a claimant's RFC is the
exclusive responsibility of the ALJ.  20 C.F.R. §§
404.1527(e)(2), 404.1546(c), and 416.946.

Plaintiff argues that the ALJ violated Social Security
Ruling ("SSR") 96-8p in his assessment of Plaintiff's RFC.
(Pl.'s Br. at 16-18). "The RFC assessment is a
function-by-function assessment based upon all of the relevant
evidence of an individual's ability to do work-related
activities."  SSR 96-8p.  SSR 96-8p requires the ALJ to "include
a narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts (e.g., laboratory
findings) and nonmedical evidence (e.g., daily activities,

24

observations)." Id. SSR 96-8p also requires that the ALJ "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.

Plaintiff argues that the ALJ's RFC assessment does not satisfy the requirements contained in SSR 96-8p because the ALJ did not engage in the "function-by-function" assessment required. (Pl.'s Br. at 18). Without the "function-by-function" assessment required by SSR 96-8p, it is impossible to know how or why the ALJ concluded that Plaintiff was able to perform her PRW. Id.

Third Circuit case law holds that the ALJ's RFC assessment must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001) (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir.1981)). An ALJ's findings should be as comprehensive and analytical as feasible. Cotter, 642 F.2d at 705. Though the ALJ does not have to undertake an exhaustive review of all the evidence, see e.g., Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000)), the ALJ needs to indicate the evidence that supports his decision and the evidence that was rejected. Cotter, 642 F.2d at 705. This is necessary so that the court can determine if the ALJ's decision is supported by substantial evidence. Id.

The ALJ considered the Physical Activities Statement and the Mental Activities Statement completed by Dr. Sireci, Plaintiff's treating physician. (R. at 17). A treating physician's opinion

25

should be given "controlling weight" when it is "well supported" by "medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2).  Even if not given controlling weight, a treating physician's opinion may still be afforded some weight by the ALJ.  <u>Id.</u>  If a treating physician's opinion is not well-supported or is contradicted by other medical evidence, an ALJ need not defer to it.  <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999); <u>Jones v. Sullivan</u>, 954 F.2d 125, 129 (3d Cir. 1991).

     The ALJ assigned little weight to Dr. Sireci's assessment of Plaintiff's physical RFC, finding it inconsistent with the preponderance of the medical evidence.  (R. at 18).  However, without stating which evidence he relied on, it is not clear what evidence the ALJ found was inconsistent with Dr. Sireci's treating-source opinion.  "Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."  <u>Fargnoli</u>, 247 F.3d at 42.  Without a discussion or reasoning of how the ALJ arrived at his physical RFC determination despite the treating physician's findings, this Court cannot say that substantial evidence exits to support it.  <u>See</u> <u>Gilbert v. Astrue</u>, 07-452, 2008 U.S. Dist. LEXIS 6680 at *21

(D.N.J. Jan. 30, 2008) ("the decision of the ALJ must explain why the ALJ has rejected medical evidence that supports Plaintiff, and which is inconsistent with other medical evidence[.]").

Dr. Sireci found that Plaintiff could sit two hours, stand one hour and walk two hours in an eight-hour work day. (R. 402). The ALJ, however, found that Daniels could sit for about six hours and stand and/or walk for about two hours in an eight hour day. (R. at 20). The Commissioner argues that the findings of Dr. Rampello, a state agency medical consultant, support the ALJ's RFC determination. (Def's Br. at 12). Specifically, Dr. Rampello found that Plaintiff could stand and or walk for at least two hours and sit for six house in an eight-hour work day. (R. 315). The ALJ, however, neither mentioned Dr. Rampello's assessment in his description of the medical evidence, nor mentioned it in his assessment of Plaintiff's RFC. See Pearson v. Barnhart, 380 F. Supp. 2d 496, 506-07 (D.N.J. 2005) (finding that without any reference to the doctors' findings in the ALJ's RFC determination, the findings could not be used as substantial evidence in support of ALJ's decision).

Additionally, the ALJ did not properly identify Plaintiff's functional limitations and assess her work-related abilities on a function-by-function basis. The ALJ must "'specify the evidence he relied upon to support his conclusion' in order to meet the requirement of SSR 96-8p." Pearson v. Barnhart, 380 F. Supp. 2d

496, 506 (D.N.J. 2005) (citations omitted).  The ALJ must cite to specific medical facts that support his RFC determination.  <u>Id.</u> If the ALJ fails to cite the specific medical facts relied upon, this Court may not make factual determinations on his behalf. <u>Pearson</u>, 380 F. Supp. 2d at 506.  To say that the ALJ's decision is supported by substantial evidence, when the ALJ does not list the medical evidence he relied upon in determining Plaintiff's RFC, approaches an abdication of the Court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.  <u>See</u> <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted).

The ALJ's mental RFC assessment does not suffer from the same infirmity - there is substantial evidence supporting the ALJ's conclusion that Plaintiff can:

> satisfactorily understand, remember and carryout [sic] detailed instructions; deal with the stress of skilled work; work in coordination of [sic] others; make simple work related decisions; perform at a consistent pace; respond appropriately to supervisors, co-workers or peers; and respond appropriately to changes in a routine work setting.

(R. at 20).  Moreover, the evidence in support of the ALJ's conclusion was set forth in the opinion.

While the ALJ rejected Dr. Sireci's mental evaluation, this rejection is properly supported by substantial evidence and the ALJ's reasoning is clear from the opinion.  First, and as discussed by the ALJ, Dr. Sireci's mental evaluation is

28

internally inconsistent.  In one section of the mental work related activities section, Sireci states that Plaintiff was seriously limited from remembering simple instructions, unable to maintain attention for two hour segments, unable to complete a normal workday without interruption from symptoms or deal with normal work stress.  (R. at 405).  On the same form, however, Sireci's conclusions are contradicted by his findings that Plaintiff could satisfactorily remember and carry out detailed instructions, deal with the stress of skilled or semiskilled work, and perform at a consistent pace.  Id.  The ALJ's finding that Sireci's mental assessment should be afforded little weight because it is inherently contradictory is well supported by the record.

The ALJ then provides the basis for his mental RFC finding, referring mainly to the findings of Dr. Mosby, a consultative evaluator, who found that Plaintiff's attention and immediate memory were appropriate, and that she was able to complete mathematical calculations and give appropriate answers to abstract questions.  (R. at 285).  Mosby also stated that Plaintiff "appears to be able to follow instructions appropriately."  (R. at 284).  While not explicitly discussed by the ALJ, the findings of Dr. Bustos, a State agency consultant, support the ALJ's determination.  In fact, Dr. Bustos' functional capacity assessment states that "claimant's mental allegations do

not significantly limit her ability to function in general.  She retains her ability to understand, remember, follow simple instructions, make simple decisions, adapt and interact with others in a low demand, low contact work setting."  (R. at 312). Thus, in light of the above, this Court cannot find that the ALJ's determination of Plaintiff's mental RFC was unsupported by substantial evidence.

### 2.   Credibility Determination

Claims of disabling back pain are among the most difficult to resolve.  Taybron v. Harris, 667 F.2d 412, 415 (3d Cir. 1981). A plaintiff's subjective complaints of pain must be seriously considered, even where not fully confirmed by objective medical evidence.  Green v. Schweiker, 749 F.2d 1066, 1068 (3d Cir. 1984).  When a plaintiff complains of pain, the testimony may not be discredited on the basis of the ALJ's own medical judgement; it may only be discredited by contrary medical evidence.  Cruz v. Comm'r of Soc. Sec., 244 Fed. Appx. 475, 481 (3d Cir. 2007) (citing Kent v. Schweiker, 710 F.2d 110, 115 (3d Cir. 1983)). However, a plaintiff's complaints of pain do not alone establish disability.  The Act requires objective medical evidence showing the existence of an impairment that could reasonably be expected to produce the pain alleged.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a); Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir.

1999).  Plaintiff bears the burden of demonstrating that her

subjective complaints were substantiated by medical evidence.

See <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1186 (3d Cir. 1992).

The ALJ is in the best position to evaluate the demeanor and

attitude of the plaintiff, and the ALJ's assessment of a

plaintiff's credibility is afforded great deference.  <u>Schoengarth</u>

<u>v. Barnhart</u>, 416 F. Supp. 2d 260, 268 (D. Del. 2006); <u>Wilson v.</u>

<u>Apfel</u>, 1999 WL 993723, at *3 (E.D. Pa. Oct. 29, 1999).  An ALJ is

free to reject a claimant's claims of disabling pain as long as

he considers the subjective pain, specifies reasons for rejecting

the claims, and supports her conclusions with medical evidence in

the record.  <u>Matullo v. Bowen</u>, 926 F.2d 240, 245 (3d Cir. 1990);

<u>Grandillo v. Barnhart</u>, 105 Fed. Appx. 415, 417 (3d Cir. 2004).

The ALJ reviewed the entire record and found:

> that the claimant's statements concerning her impairments
> and their impact on her ability to work, are not persuasive
> to establish "disability" in light of the degree of medical
> treatment required; the reports of the treating and
> examining practitioners; and her medical history.  I believe
> the claimant has some subjective symptoms, but not the
> intensity, frequency, or duration alleged.

(R. at 19).  Plaintiff argues that the ALJ ignored crucial

testimony by condensing twenty pages of testimony by the

Plaintiff into these four sentences in the ALJ's opinion.  (Pl.'s

Br. at 9).  This is not the case.  The ALJ elaborated on the

reasons for his credibility finding beyond these sentences.  The

ALJ analyzed the medical evidence of record and specifically

noted the medical evidence that contradicted Plaintiff's complaints. (R. at 19). For example, the ALJ noted that although claimant reported low back pain, findings from neurological examinations had revealed no residuals of lumbar radiculopathy in the form of muscle weakness, atrophy, reflex depression, or sensory loss. Id. Plaintiff had no signs of muscle wasting or atrophy that were usually observed when pain is severe and limiting. Id. Findings from examinations had shown full range of motion of the cervical spine with no tenderness or muscle spasm noted and a full range of motion in the upper and lower extremities. Id. Dr. Ressler had reported only mild restriction in range of motion of the lumbar spine, as well as mild tenderness to palpation over the lumbar paravertebral region of the lumbar paravertebral region bilaterally. Id. EMG studies of both the upper and lower extremities had been normal, as was a MRI of the lumbar spine. (R. at 19). Dr. Khona reported symptom magnification by the claimant during examination. (R. at 19).

When there is little evidence to support subjective complaints of pain, and there is evidence that medication relieves the pain, an ALJ may decide that there is insufficient evidence to support a finding of disability. Cruz, 244 Fed. Appx. at 481 (citing Matullo, 926 F.2d at 245). Plaintiff testified that the adverse side effects of her medication included difficulty concentrating, confusion, depression, and

drowsiness.  (R. at 434).  Daniels also testified that the
medication caused her to sleep on the job, contributing to her
losing her job.  (R. at 442-43).  However, Dr. Arino repeatedly
noted that Plaintiff's medication was providing her adequate pain
relief without any side effects.  (R. at 324, 400-01).  Plaintiff
also reported to Dr. Padula that she was doing well on her
medications and denied any side effects.  (R. at 326).  Daniels'
testimony regarding her pain medication was inconsistent with the
medical evidence.  See SSR 96-7p ("One strong indication of the
credibility of an individual's statements is their consistency,
both internally and with other information in the case record.")
The ALJ supported his conclusion that Daniels' pain was not as
disabling as she claimed with medical evidence in the record.
See Matullo, 926 F.2d at 245.

    The ALJ must take into consideration treatment, other than
medication, when considering subjective allegations of pain.  20
C.F.R. § 404.1529(c)(3), SSR 96-7p.  Plaintiff testified to
constant pain in her lower back and that she has shooting pain in
her hips and thighs about three or four days a week.  (R. at 431-
32).  However, Dr. Padula reported that therapy afforded Daniels
significant relief from her back pain.  (R. at 336).  A series of
L3, L4, and L5 medial branch nerve blocks gave Plaintiff short-
lived complete relief.  (R. at 335).  Plaintiff reported to Dr.
Padula that L3, L4, and L5 medial branch nerve rhizotomy with

33

radio frequency gave her significant relief of the burning across her lower back.  (R. at 333).  Dr. Padula reported that Daniels was doing "quite well."  (R. at 332).  A lumbar epidural steroid injection performed by Dr. Ressler had provided significant relief.  (R. at 407-08).

It is the ALJ who evaluates the intensity and the persistence of pain or symptoms and the extent to which they impact the individual's ability to work.  <u>Pearson v. Barnhart</u>, 380 F. Supp. 2d 496, 508 (D.N.J. 2005); <u>see</u> <u>Hartranft</u>, 181 F.3d at 362.  Here, the ALJ provided a sufficient factual foundation for his assessment that Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credibly.  The ALJ found that Plaintiff had some subjective symptoms, but not the intensity, frequency, or duration alleged.  (R. at 19).  Plaintiff's contention that the ALJ did not properly evaluate her subjective claims is unfounded.  Accordingly, the ALJ's decision regarding Plaintiff's lack of credibility is supported by substantial evidence.

**Conclusion:**

For the foregoing reasons, the Court finds that the ALJ's determination of Plaintiff's physical RFC is not supported by substantial evidence.  However, the Court finds that the ALJ did properly evaluate Plaintiff's mental RFC and credibility

34

regarding complaints of pain.  The decision below is vacated and
this case is remanded to the ALJ for further consideration
consistent with this Opinion.  An accompanying Order will issue
this date.


Dated: April 21, 2008                s/Renée Marie Bumb
                                     RENÉE MARIE BUMB
                                     UNITED STATES DISTRICT JUDGE

35